

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2006

# Wijaya v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3513

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wijaya v. Atty Gen USA" (2006). *2006 Decisions*. Paper 89.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/89

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Case No:  05-3513

SUNARYO WIJAYA,

Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,

Respondent


On Petition for Review of Final Decision of the
Board of Immigration Appeals
BIA No.: A95-381-265
Immigration Judge: Rosalind K. Malloy


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 13, 2006

Before: SMITH and ROTH, *Circuit Judges*,
and YOHN *District Judge**

(Filed: December 15, 2006 )


---

[*]The Honorable William H. Yohn, Jr., Senior District Judge for the Eastern
District of Pennsylvania, sitting by designation.

1

SMITH, *Circuit Judge*.

Sunaryo Wijaya petitions for review of a final order of the Board of Immigration Appeals (BIA), affirming the denial by the immigration judge (IJ) of Wijaya's application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).[1] We will deny Wijaya's petition for review.

Wijaya is a citizen of Indonesia. He is ethnically Chinese and a Roman Catholic. He first entered the United States on a six-month visitor's visa on July 27, 2000. He briefly returned to Indonesia on January 24, 2001, and returned to the United States on March 13, 2001. He applied for asylum, withholding of removal, and relief under the CAT on March 6, 2002. The Government informed Wijaya on July 29, 2002 that he had overstayed his visa and that removal proceedings would be instituted against him. Wijaya conceded his removability at a hearing on August 29, 2002. The IJ denied Wijaya's application at a hearing on March 5, 2004. The BIA adopted and affirmed the IJ's decision on June 30, 2005. Wijaya timely appealed.

Wijaya gave credible descriptions of several instances of violence and harassment that he believed were motivated by his ethnicity and religion. Wijaya testified that a mob

---

[1] The IJ had jurisdiction pursuant to 8 C.F.R. § 1208.2(b). The BIA exercised jurisdiction under 8 C.F.R. § 1003.1(b). We have jurisdiction to review the final order of the BIA under 8 U.S.C. § 1252. When the BIA affirms an IJ's decision without opinion, we review the IJ's decision as the final agency determination. *Berishaj v. Ashcroft*, 378 F.3d 314, 322 (3d Cir. 2004).

looted and burned his store on May 14, 1998. Wijaya described receiving anonymous threatening phone calls on April 10, 2000, in which the caller insulted him and demanded that he convert to Islam. Two days later, a group of men threw stones through his home's windows. Wijaya believed the incidents were related. Wijaya testified that, on April 20, 2000, two men attempted to forcibly enter Wijaya's home, but fled when his wife called the police. Wijaya stated that on May 12, 2000, three men attempted to force him into their car and abduct him, but were scared away when his wife began to scream and onlookers arrived. After Wijaya came to the United States, his church in Indonesia was bombed, killing 16 people.

Wijaya could not identify any of his assailants. He testified that both he and the police believed them to be "extremist Muslims." When asked why he believed he was targeted by extremists, Wijaya testified that he held frequent prayer meetings in his home which featured singing which was audible outside his house. His home was located near a mosque.

Wijaya testified that he came to the United States to visit his sister, who was granted asylum on the basis of her religion and ethnicity. Wijaya began work within a week, but returned to Indonesia after five months. He testified that he returned due to his father's heart attack, but returned with his sister's four year old son in tow. The IJ was skeptical of Wijaya's description of his reason for returning, but the BIA held that this did not rise to the level of an adverse credibility determination. Wijaya's wife is legally in the United States on a visitor's visa. Her petition has been consolidated with Wijaya's.

3

We must determine if substantial evidence supports the IJ's decision to deny relief to Wijaya. *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992). To hold that Wijaya is entitled to relief, we must find that the evidence of record "not only supports that conclusion, but compels it . . . ." *Id.* at 481 n.1; 8 U.S.C. § 1254(b)(4).

We have held that "[i]n order to establish eligibility for asylum on the basis of past persecution, an applicant must show (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003) (internal quotes omitted). Wijaya did not proffer evidence sufficient to compel the conclusion that these requirements were met. Apart from the threatening phone call, the IJ correctly observed that there is no direct evidence establishing that the other attacks were motivated by religion or ethnicity. Although it would have been eminently reasonable to conclude that the attacks, particularly the three following the anonymous phone call, were motivated by religion or ethnicity, the evidence does not compel us to overturn the IJ's ruling to the contrary. Similarly, the evidence does not compel us to overturn the IJ's conclusion that the Indonesian government is neither unable nor unwilling to control the Muslim extremists. State Department reports in the record establish that the Indonesian government has had some success in curbing violence by Muslim extremists. The IJ appears to have concluded that the assaults on Wijaya amount to generalized mob violence, which cannot support his petition for relief. *See Abdille v. Ashcroft*, 242 F.3d

4

477, 494-95 (3d Cir. 2001) ("Mere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world, generally is not sufficient to permit the Attorney General to grant asylum.").

To establish a well-founded fear of future persecution, a petitioner must demonstrate: (1) a credible subjective fear of persecution and (2) "pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b)(1)(iii)(A). In *Lie v. Ashcroft*, 396 F.3d 530, 537-538 (3d Cir. 2005), we observed that:

> Petitioners argue, with some force, that anti-Chinese violence persists, citing evidence in the record of widespread attacks on Chinese Christians in Indonesia, including press accounts of riots, vandalism, and robbery targeting Chinese Christians. Nevertheless, such violence does not appear to be sufficiently widespread as to constitute a pattern or practice. The 1999 [State Department] Country Report on Indonesia indicated that there was a sharp decline in violence against Chinese Christians following the period of intense violence in 1998, and noted that the Indonesian government officially promotes religious and ethnic tolerance. Moreover, this violence seems to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence. Given these considerations, we are not compelled to find that such attacks constitute a pattern or practice of persecution against Chinese Christians.

*Id*. at 537-38. The evidence in the record before us, particularly the State Department's International Religious Freedom Report for 2003, supports the IJ's conclusion that conditions for Chinese Christians in Indonesia have not worsened and may have actually

5

improved. Wijaya credibly testified to conduct more severe than that complained of in *Lie*. *Id*. at 536. However, the record does not compel us to disturb our finding in *Lie* that there is no "pattern or practice of persecution against Chinese Christians" in Indonesia. *Id*. at 538.

The IJ found that because Wijaya had not shown an objectively reasonable basis for his fear of persecution so as to establish grounds for asylum, he had also not established the clear probability of persecution required for withholding of removal. *See, e.g.*, *Gabuniya v. Attorney General*, 463 F.3d 316, 320-21 (3d Cir. 2006).

To demonstrate entitlement to relief under CAT, Wijaya must show that he is "more likely than not" to be tortured if he returns to Indonesia. 8 C.F.R. § 1208.16(c)(2). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). No evidence in the record compels the conclusion that Wijaya suffered any mistreatment by or with the acquiescence of the Indonesian government.

The evidence in the record does not compel a conclusion contrary to that of the IJ. We will deny the petition for review.